NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**LISA BROOKS CARLSON,**
*Petitioner,*

**v.**

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent.*

---

2013-3112

---

Petition for review of the Merit Systems Protection Board in No. DC831E130148-I-1.

---

Decided: February 10, 2014

---

LISA BROOKS CARLSON, of Virginia Beach, Virginia, pro se.

ERIC E. LAUFGRABEN, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were STUART F. DELERY, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MARTIN F. HOCKEY, Assistant Director.

---

Before RADER, *Chief Judge,* REYNA, and WALLACH, *Circuit Judges.*

PER CURIAM.

In this federal employment case, Petitioner Lisa Brooks Carlson appeals the Merit Systems Protection Board's ("Board") final decision affirming the Office of Personnel Management's ("OPM") determination denying her application for disability retirement under the Civil Service Retirement System ("CSRS") as untimely filed. *Carlson v. Office of Pers. Mgmt.*, No. DC-831E-13-0148-I-1 (M.S.P.B. Mar. 19, 2013). The Board also found the record did not allow waiver of the applicable filing deadline. Because substantial evidence supports the Board's decision, this court affirms.

## BACKGROUND

Ms. Carlson was employed as a Window Clerk by the U.S. Postal Service ("agency") beginning on February 25, 1978. The record shows that on May 24, 1993, Ms. Carlson suffered an on-the-job injury. Despite this injury, Doctors informed Ms. Carlson that she was to remain at work full-time under the medical restriction of using an appropriate chair. On April 21, 1994, however, Ms. Carlson left work, and on April 28, 1994, she was informed by letter that she was considered absent without leave ("AWOL"). After a grievance Ms. Carlson filed with the American Postal Workers Union was resolved, the agency officially removed her from service on March 21, 1995.

In February 1996 and December 2002, the Office of Workers' Compensation Programs ("OWCP") denied Ms. Carlson's "claims for lost wages stemming from her April 21, 1994 condition. Specifically, the OWCP found that Ms. Carlson's alleged disability was not causally related to her 1993 job-related injury." *Carlson v. Merit Sys. Protection Bd.*, 446 F. App'x 308, 309 (Fed. Cir. 2012).

Although the agency ultimately separated her for being AWOL (a for-cause reason), Ms. Carlson contended that she left work because of pain, and therefore, her absence was due to her compensable back injury, entitling her to restoration rights. On July 23, 2010, Ms. Carlson "appealed to the Board alleging that the agency denied her restoration rights following a compensable injury." *Id.*

The Board determined that it lacked jurisdiction to hear Ms. Carlson's case because she failed to make a non-frivolous allegation that her separation from the agency was because of a compensable injury and not because she was AWOL. This court affirmed. *Id.*

On September 20, 2010, Ms. Carlson submitted an incomplete application for immediate retirement benefits under CSRS. OPM received her incomplete application on or about October 7, 2010. Ms. Carlson answered "Unknown" to a question on the application asking about her date of separation from the agency.

Ms. Carlson submitted a corrected retirement application claiming that she suffered from four herniated discs with stenosis and double major thoracolumbar scoliosis. Ms. Carlson "argued that she was unable to perform the duties of her Window Clerk job because she could not sit, stand, or walk for long periods and could not lift packages or trays." Resp't's App. ("App.") 25. Ms. Carlson alleged "that she became disabled from her position in approximately April 1994." *Id.*

By letter dated May 13, 2011, OPM notified Ms. Carlson that her application for disability retirement was untimely filed because she had filed it after the required time limit of one year after her separation. OPM notified her "that this requirement could only be waived if she was mentally incompetent at the time of separation or became incompetent within one year thereafter." App. 26. The letter directed Ms. Carlson to provide evidence for a competency determination within thirty days.

Ms. Carlson did not produce any evidence, and in a letter dated June 23, 2011, OPM informed Ms. Carlson that her application was dismissed. Ms. Carlson timely requested reconsideration of OPM's decision, and thereafter, in a letter dated May 7, 2012, OPM affirmed its earlier decision. Ms. Carlson appealed to the Board. The appeal however was dismissed at OPM's request upon Ms. Carlson submitting evidence and medical documents pertaining to her mental competency.

After reviewing Ms. Carlson's newly submitted evidence, on October 22, 2012, OPM issued a decision yet again rejecting Ms. Carlson's application as untimely filed. OPM concluded that the newly submitted evidence did not prove that Ms. Carlson was mentally incompetent and lacked the capacity to file a timely application for disability retirement. Ms. Carlson appealed that decision to the Board.

On March 19, 2013, in an initial decision, the Board affirmed OPM's decision. The Board found that OPM did not receive Ms. Carlson's retirement application until October 7, 2010, which was over fifteen years after her separation from service on March 21, 1995, and well past the one-year filing deadline. The Board also determined that Ms. Carlson's failed to show medical incompetency required to waive the one-year filing deadline. The initial decision became the Board's final decision on April 23, 2013. **[A35]** Ms. Carlson timely appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(9) (2012).

## DISCUSSION

Our review of a decision of the Board is circumscribed by statute. We can set aside a Board decision only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2012). "A Board decision is

unsupported by substantial evidence when it lacks such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McLaughlin v. Office of Pers. Mgmt.*, 353 F.3d 1363, 1369 (Fed. Cir. 2004) (internal quotation marks and citation omitted).

An application for disability retirement ordinarily must be filed with OPM "before [an] employee . . . is separated from the service or within 1 year thereafter." 5 U.S.C. § 8337(b). That time limitation may be waived if, "at the date of separation from service or within 1 year thereafter," the applicant was "mentally incompetent," and "the application is filed with [OPM] within 1 year from the date of restoration of . . . competency." *Id.* "[M]ental incompetence is an inability to handle one's personal affairs because of either physical or mental disease or injury." *Rapp v. Office of Pers. Mgmt.*, 483 F.3d 1339, 1341 (Fed. Cir. 2007). This court has also recognized that waiver of the time limit established in § 8337(b) "may lie against the agency when procedural error, in contravention of the agency's established duties, results in derogation of the employee's rights." *Johnston v. Office of Pers. Mgmt.*, 413 F.3d 1339, 1342 (Fed. Cir. 2005) (remanding to determine whether petitioner received the requisite notice that his employment had been formally terminated and advising him of his options).

Substantial evidence supports the Board's decision denying Ms. Carlson's retirement application as untimely. Ms. Carlson's application was filed more than fifteen years after her separation from federal service. Thus, unless the record shows that Ms. Carlson was not given notice of her removal from federal service or that she was mentally incompetent during the relevant time period, Ms. Carlson's application must be denied as untimely.

The Board found it more likely than not that Ms. Carlson was on notice that she was removed from federal service effective March 21, 1995. The Board noted that

"less than one month after [Ms. Carlson's] separation date[, on April 11, 1995, she] completed an Application for Refund of Retirement Deductions wherein she stated that her Federal employment had ended on [March 21, 1995]." App. 12. The record reflects that OPM, on June 22, 1995, authorized a payment of $20,452.79 in response to Ms. Carlson's application. Thus, the Board's finding that Ms. Carlson was more likely than not on notice that her effective removal date was March 21, 1995 is supported by the record.

The Board likewise determined that Ms. Carlson's evidence was insufficient to show that she was mentally incompetent as of the date of her removal on March 21, 1995, or during the one-year period thereafter. Ms. Carlson claims to have been suffering from chronic pain and severe depression as a result of her on-the-job-injury. To substantiate her contention, Ms. Carlson submitted letters from a doctor and a physical therapist, which stated that she is "totally disabled." App. 13. In addition, Ms. Carlson testified that during the relevant time period she suffered from personal issues ranging from her husband leaving the family to the foreclosure of her home causing further emotional stress. Ms. Carlson's mother, Ms. Edith Harryman, and Ms. Carlson's son, Mr. Ian Carlson, supported Ms. Carlson's contention with written statements and testimonies of their own.

Despite Ms. Carlson's showing, the Board determined that the evidence was lacking as of the date of her removal on March 21, 1995, or during the one-year period thereafter. The Board found the fact that Ms. Carlson was capable of filing an application for a refund of her retirement deductions one month after she was removed, and the fact that she filed an incomplete and a corrected retirement application and various legal documents throughout the fifteen years actually showed Ms. Carlson's competence in handling her personal affairs. Thus, the record supports the Board's finding that Ms. Carlson

did not meet her burden of establishing mental incompetency.

The Administrative Judge expressly recognized Ms. Carlson's circumstances as both unfortunate and compelling. Upon review of the record, this court is also sympathetic to her plight. Ms. Carlson, her mother, and her son all provide poignant testimony. We, like the Board, however, are bound to apply the law as written. The Board correctly applied the law and its decision was not arbitrary or capricious, and was supported by the record.

### AFFIRMED

No costs.